Winfield Mining & Contracting Company v. Commissioner.
Winfield Mining & Contracting Co. v. Commissioner
Docket No. 47054.
United States Tax Court
T.C. Memo 1954-76; 1954 Tax Ct. Memo LEXIS 168; 13 T.C.M. (CCH) 571; T.C.M. (RIA) 54182; June 25, 1954, Filed *168 Lee C. McCandless, Esq., for the petitioner. George J. Rabil, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $3,914.88 in income tax of the petitioner for 1948. The only issue for decision is the amount of a deduction for percentage depletion on a coal mine. Findings of Fact The petitioner filed its corporation income tax return for 1948 with the collector of internal revenue for the Twenty-third District of Pennsylvania. The petitioner obtained leases on several hundred acres of coal lands in Clarion County, Pennsylvania. These were adjacent to other coal properties on which Wingert Contracting Company, Inc., (hereinafter called Wingert) was conducting stripping operations. The petitioner and Wingert entered into an agreement on February 26, 1948 under which Wingert strip mined coal for the petitioner from one of its leases. The contract provided that Wingert would remove the overburden from the coal, load the coal on trucks, haul it to the tipple at the railroad siding, prepare it and load it on railroad cars for shipment for $3.05 per ton payable on the 15th and 30th of each month. Wingert *169 had the right to use the surface as needed in the operation. It had the right to terminate the work if it proved unprofitable for any reason. Wingert was to receive 75 per cent of any increase in the price at which the coal was sold. Wingert was to bear all expenses incident to its operations, including all insurance. It was to backfill the land after the coal had been removed. The petitioner was to be responsible for the replanting of the stripped area. The contract was to be in effect for two years and thereafter from year to year until all marketable coal had been removed. Wingert had an option to buy the lease if the petitioner sold. The contract was not transferable except with the consent of the other party. The payment of $3.05 per ton was raised to $3.10 per ton because of an increase in hauling costs. The petitioner and Wingert entered into another similar contract on July 1, 1948 with respect to another lease owned by the petitioner. Wingert was to receive $3.10 per ton under that contract. The contracts were carried out in accordance with their terms. Wingert received 75 per cent of increases in prices. The petitioner sold its coal through a sales agent which also *170 acted as agent for Wingert selling coal which it mined from its adjacent properties. The coal was hauled by trucks a few miles to Wingert's tipple at Sligo where it was processed and shipped. The petitioner received the sales price of its coal, less the agent's commission, paid the royalties due on the leases, and paid Wingert pursuant to the contracts. The total amount received by the petitioner as proceeds of coal sales during 1948 was $254,115.45, of which $186,247.94 was paid to Wingert. Coal was lifted from the exposed vein only after it had been sold and only on orders to Wingert from the sales agent showing the customer's name, the type of coal, the price and shipping instructions. Wingert, the exclusive stripping contractor for the petitioner on the leases, furnished all equipment required for stripping, processing and loading the coal. It built roads, supplied trucks, bulldozers, tipples, shovels, drag lines, pumps, machinery, equipment, materials, tools and labor, and made all necessary improvements for the operation, removing, stripping and extraction of the coal. It had large investments in equipment and buildings which it used to perform the contracts. It employed *171 about 60 men who spent about one-third of their time performing the contracts. The petitioner had no employees. It obtained stripping permits, put up performance bonds and paid advance royalties. Its total expenditures prior to production amounted to about $3,719.25. The petitioner claimed depletion of $11,941.94, representing 5 per cent of the excess of its gross receipts from sales over royalties. The Commissioner, in determining the deficiency, allowed a depletion deduction of $2,629.55, representing 5 per cent of the excess of gross receipts over royalties and the payments to Wingert. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: This case is not distinguishable in principle from , dismissed and affirmed Fed. (2d) , (Sept. 18, 1953) and , (April 13, 1954). Cf. ; , reversed in part sub nom. , (April 9, 1954); (June 16, 1954). Wingert *172 obviously assumed risks and had rights which gave it an economic interest in the coal in place. It had the exclusive right to mine coal from the leases without interference from the petitioner, the entire responsibility for and expense of production, and had to look solely to the sales for payment and profit on an increasing scale as and if prices advanced. The Commissioner did not err in excluding from the petitioner's gross income from the property the large amount paid Wingert. Decision will be entered for the respondent.